Good morning. My name is Jana Hendricks, I'm a police court. I represent Carlos and Juanita Lopez who are here in the courtroom today. I would like to reserve three minutes for rebuttal. I want to start from a little introduction, so not to undermine my client's presence in this courtroom. Sergeant Carlos Lopez Jr. was a combat veteran, 13 years of service, deployed to Iraq, exposed to more than 25 explosions. He came home with a traumatic brain injury due to these explosions, PTSD, clinical depression, and documented prior suicidal ideations. He came home to the country that used his image in VA's own advertising with the tagline, you served, let us serve you. In fact, that was in a trial record five days after Mr. Lopez came, Sergeant Lopez came to seek desperate help after being prescribed off-label black box medication for routine low back pain, he took his own life. At trial, we've presented several instances of breach of standard of care. I don't want to repeat everything that's in my opening brief. I want to focus on aspects that I find it important citing to the citation. Number one, the court did apply incorrect standard of care. So this is a medical malpractice case, unfortunately there is no jury trial, and we have to try this case before the judge, and the judge must apply California tort law. The California tort law mandates that a reasonably careful physician must ask prudent and careful physician in the same or similar circumstances. That's from Landeros repeating the same case that the court cited in its decision requires to have same or similar circumstances. However, the court who basically took a wrong yardstick to measure credibility or the standard of care, apply the standard of general population, walking into a busy walking clinic, and therefore since walking clinic psychologist was too busy that 30 minute for Carlos Lopez Jr. who was going through incredibly difficult time and complaining about difficulties he was experiencing, merely not even being able to differentiate reality from a nightmare, that was enough. To compound that, the judge even made a comparison with his own experiences when he goes to the doctor, they don't pull out FDA insert and give him warnings. Was that particular point, are you basically arguing that the district court used its own lay opinion in lieu of expert opinion? I guess one of the things I'd like you to address is just sort of figuring out how do we know which expert the district court believed because it seems improper for the district court to kind of just opine on its own, but it was a little unclear to me whether he believed plaintiff's expert or defense expert and then that might lead you into addressing the problem that you flagged with Dr. Jacks. Well, here's the interesting point and it's a great question. There was nothing for the court to believe defense experts. Defense experts did concede to breach of standard of care. And that's a very important aspect that I'd like to really ... I want to focus on really on this- Standard of care. Who exactly are you talking about? I'm a little bit more interested, I mean, I may be- Dr. Dannen, neurologist, stated that any physician, neurologist, must familiarize himself and give the warning that FDA mandates. The FDA warning, which is 3ER169, for gabapentin, says patients, their caregivers, and families should be informed that AEDs increase the risk of suicidal thoughts and behavior and should be advised of a need to be alert for emergence of worsening of the signs and symptoms of depression, any unusual changes in the mood and behavior, or emergence of suicidal thoughts, behavior and thoughts of self-harm. Behaviors of concern should be reported immediately to the healthcare providers. So this is a FDA mandate. There are some old line of questions, I mean, cases that really suggest that what FDA puts in their insert, that that should be definition of how to act to comply with the standard of care, because the manufacturer says this is what can happen. You have to tell the patient. So the, at trial, Dr. Jacks, who was the government's own psychiatrist, adopted the standard of care, 5ER610. Dr. Jacks was asked, were there any reasonable physician, any reasonable physician, 5ER610. Prescribing gabapentin must familiarize himself with the FDA insert. He answered, of course. He asked whether reasonably careful physician, after reading FDA warning, would monitor patient for possible small risk of suicidal ideations. He answers, of course. At 5ER611, he asked whether failure to familiarize would be a deviation from standard of care. He answered, probably. So the FDA itself supplies the standard of warning. And it's important to understand that causation was not at issue. Judge Wilner found that any of the breaches, in a way they prescribed the gabapentin without the warning, the failure to monitor, and the lastly, interaction with Dr. Holland, would have caused Sergeant Lopez taking his life. Can I ask you to go back to the, I think the point you started with on the standard of care was that there's a difference and more robust standard of care for somebody treating a population of veterans than for somebody treating the general population. My question is, was there any, I didn't see in the record that there was any expert testimony supporting that proposition. Well, that's stemming from, and I can, so I started off my opening statement from the standard of care, what a reasonably careful physician or medical professional would do in the same or similar circumstances, with similar circumstances being patient with the same comorbidities, PTSD, TBI, clinical depression. So we put them on an elevated platform, meaning they're likely to already have those symptoms. So before prescribing gabapentin, that increases, even if it's in a small or rarely, doesn't matter, but it does increase the risk of suicide or suicidal ideations. So that was the same or similar circumstances. My point to the court was, you have to consider- Right, but I understand, perhaps you made that point, but did you have expert testimony? Of course, Dr. Grelis. Dr. Grelis testified, and I can give you the pinpoint aside that it's not that he was not just any patient. He was a patient who already had the increased risk. So this is my expert's testify. And if you see in the record, Judge kind of shutting me down for pulling up KC502, KC502 is the instructions that I was trying to show the court and witnesses that says the standard of care was reasonably careful, medical professional will do in the same and similar circumstances. And the circumstances are, you're arguing that those circumstances include this special population of soldiers. We have a walking psychologist cleaning. That is for a special population, for veterans who serve this country. Most of them, big number of them have a PTSD. They have already mental health issue as a result of their service. They should be able to go in and the system should be able to recognize their increased risk. But even with, even if we don't view the VA, this particular soldier population, veteran population as meriting like some kind of specific standard of care, is it your position that the standard of care was breached period? Yes. Based on the interactions? Yes. The expert testimony that, so I guess one question I have to that is just going back to the question I asked earlier. Do you, so if the district court, I mean, yeah, if the district court didn't credit your expert, that makes your case fail. I'm trying to figure out what the district court did and did not credit on Dr. Grylls, because clearly rejects some aspects, particularly with Dr. Holland's visit, but I wasn't sure if he threw out the testimony entirely. No, the, well, I think I was prepared. And I argued in my brief that crediting Dr. Holland's testimony was a clear error. It's undisputed. She had three versions of the event. And rule 26 does exist to prevent ambush at trial. This was an ambush. What difference would it have? So I think you're specifically talking about Dr. Jack says on the stand, I just found the notes and getting ready for trial. And now I see that there were these prior planned suicidal intentions. And that that would have shifted his view of the case from a low risk to an increased risk. Is that what you're talking about?  But I think what I mentioned, the ambush was in the context of Dr. Holland's testimony. So I will explain that a little bit later. But let me answer the question you asked me. Plaintiff's expert, Dr. Grail, has testified that the similar circumstances standard, it's 4ER331, tied to those comorbidities. And it's really, I've been trying medical malpractice cases. I've tried in a jury trial, in arbitration. It is well established. That's why I brought, I brought a blow up of jury instructions with the judge says, what are you doing here? Because if he shuts me down, I want to show him. So that's it. And the government said I forfeited my right. I mean, I am pretty tenacious. I don't forfeit things easily. So I did even show him a blow up. And the issue here is when a person, let's say elderly 77 year old man with some renal failure goes to the ER and says, I've been vomiting for two days. So he's already similar circumstances. The red flag is, okay, he has comorbidities. He's already has a renal failure. So we have to check blood tests, work up. Rather than 16 year old, or I don't know, 20 year old healthy person goes. But the district court. It's, it seems to me that your argument about the standard of care is a factual one. Like what you're just saying. You have to consider the particular facts and the particular history to decide the care that's needed rather than a legal problem with what the standard was. No, I just want to also point your attention that in his decision, the judge said left out same or similar circumstances from Landero's definition. And it is a legal issue when you take a wrong yardstick or measuring tape and try to measure. The court is the arbiter of the credibility of experts. But if he leaves out that and he is just merely comparing with the general population, that is a legal issue. That is not. Does he have time for rebuttal? Yes. Can I ask you before you, just really briefly, the prejudice that you suffered from Dr. Jack's sort of changing his testimony and not disclosing it under Rule 26. Could you just address that briefly? The opinions that we would elicit would have been standard in practice when a high risk individual who had already access to the weapon indicated that he had tried or thought of using firearm in taking his life. So that should have been, he would have, we would have elicit testimony, which is that should have been flagged on his record. So next walk-in appointment, they'll say, okay, this person already has, there are a difference between suicidal ideations and suicidal intent. Suicidal intent when you have a concrete plan. Suicidal ideation is when somebody is mulling ideas. Well, I'm thinking about it. But intent, that's more dangerous. So the intent needs to be flagged, which is had it been flagged in a chart, perhaps Dr. Poland would say, okay, I need to 5150 this individual patient because he had a prior history of intent. Thank you. I'll still give you a minute and a half for rebuttal, but let's, it's fine. Good morning, Your Honors. May it please the Court. Assistant United States Attorney Margaret Chen on behalf of Appellee United States. Mr. Lopez's death was tragic. However, the district court correctly concluded that plaintiffs failed to meet their burden of proving by a preponderance of the evidence that any VA provider engaged in negligence or malpractice or caused Mr. Lopez's death. I'd like to respond to a few points that counsel made in her argument. First, Your Honor, Judge Friedland is correct that the standard of care is a factual issue. Under California law, plaintiff bears the burden of establishing the applicable standard of care, the breach of a standard of care, and that any such breach was the cause of any claimed injuries. And because these are fact-dependent, these are reviewed for clear error. Plaintiffs did not argue before the district court. But it does seem that plaintiff is correct that the district court didn't use the word similar circumstances when it articulated the standard at ER-5. How do we know that the district court knew the right standard? The parties did not sort of—similar circumstances is the language that is in California law. The court, in sort of analyzing similar circumstances, is looking at sort of the issue that is being presented at a medical appointment. Plaintiffs did never raise this issue about veteran population or that there is a modified standard of care based on a person's veteran status, nor have plaintiffs identified any California case law or statutory provision that would require that the conduct of the court exclusively treat veterans. I can understand this. There's a little bit of a—one distinction is just whether veterans get somehow a different standard of care, which is one argument. It seems that the other aspect of the argument is just purely factual based on this patient presenting and sort of whether the correct standard of care was being evaluated given his history and risk factors. Yes. The court received testimony from the VA providers who were aware of his comorbidities, if you will, his history of PTSD, TBI, in assessing his presentation at those clinical encounters, the neurology appointment, as well as the walk-in psychology appointment. The district court simply found that plaintiffs did not meet their burden of showing, of those appointments, breach the standard of care applicable under those circumstances. One of the things that's in the district court opinion in terms of its reference to plaintiff's expert, Dr. Grails, is that the district court clearly rejects the 5150 suggestion or—and then sort of seems to improperly suggest that plaintiff has said that Dr. Holland should have spent hours interviewing this patient when, in fact, that's not what Dr. Grails said. But there were a number of other suggestions that Dr. Grails had in terms of what would have been an appropriate response to this patient in terms of calling family, asking about—or consulting with a psychiatrist or someone else about medication, having a plan, maybe sitting him down and making sure he didn't leave without a plan other than a hotline. So it seemed—so I was having trouble looking at the district court's findings to figure out what the district court was rejecting, what the district court was injecting, and what the district court was crediting. Well, I would note for the court initially that the plaintiffs are not—have not challenged on appeal any of the district court's findings or conclusions related to Dr. Grails' testimony. So to the extent that the district court was not persuaded by Dr. Grails' testimony, those are issues that are not before this court. With respect to, you know, as a court—as Your Honor has noted, the court has accepted and rejected certain aspects of Dr. Grails' testimony. But I believe on overall, the district court was not persuaded by Dr. Grails' testimony in finding that the warnings regarding Gapopentin that were insufficient and—or that Dr. Holland provided negligent care or negligently evaluated Mr. Lopez at that last appointment prior to his death. Do you think that the district court—I mean, so they're making this Rule 26 violation based on Dr. Jack's testimony, which seems to be based on the fact that he would have he would have—his report didn't address this higher level of risk that would—he would have assessed based on the notes that he didn't see until right before trial. Can you just address that problem? It was not an abuse of discretion for the district court to accept and receive the testimony of Dr. Jacks. The district court ultimately did not rely on the testimony of Dr. Jacks in reaching its findings and conclusions in this case. How do you know that? The district court's finding—I believe that's reflected in the court's written order following the trial. Does the court say, I'm not relying on Dr. Jacks? He doesn't, but in his analysis, he makes no reference to Dr. Jacks' testimony or any of the sort of opinions that Dr. Jacks offered during the course of trial. So to the extent that this court may find that it was error for the district court to admit the testimony of Dr. Jacks, any such error is harmless as the district court clearly did not rely on Dr. Jacks in order to reach the conclusions as it did here. I just also would like to correct a point that counsel made with respect to causation. First, plaintiffs have not raised to this court any appeal of the district court's causation conclusions, and the court did, in fact, reach causation in a number of instances in its opinion, finding that even if the neurologist had not adequately counseled Mr. Lopez on the potential side effects of gabapentin, that they have not provided the court with a factual basis to conclude that, to find that any such failure, that Mr. Lopez would not have taken the medication or would not have taken his life. If the court has no further questions, the United States would respectfully request that this court affirm the judgment below. Let's put a minute and a half on the clock. Very quickly, Your Honors. The standard of care is a legal question, and it's reviewed de novo under Bunting v. United States. California law requires, and this is why I had even jury instructions, that reasonable degree of knowledge and skill, that's a standard of care, in which possesses and exercised by other members in his profession in a similar circumstances. That whole phrase was omitted from district court's ruling. Landeros v. Flood. So, this is the Landeros case. The court not only omitted, but he compared himself, his own experience. Well, he's not a veteran. Well, and put aside veteran, he doesn't have a PTSD. I don't think he was exposed to over 25 explosions, with no disrespect. Of course, that's just probably my knowledge that he was not. Let me be pointing to two moves there. One is that it's almost like we're missing a jury instruction because that language, the magic language from Landeros on the similar, is not in the opinion. So, we don't actually know if it was being applied. That's one aspect. And then you're touching on another one, which is the district court. Which expert is he relying on, and is he substituting or injecting his own? I think he injected his own experience, that when he goes to the doctor, then they'll pull out. And respectfully, he's not understanding concept of similar circumstances because he's not a high risk patient with comorbidities. So, as far as the breach, the breach was conceded by Dr. Wilson. The breach was conceded by Dr. Chong. And, for example, Dr. Wilson, prescribing neurologist, because Dr. Chong was attending, testified at 5ER 527 that he agreed that he had a duty to familiarize himself with the FDA warning. At 5ER 532, he said, I don't think I've looked at too many FDA inserts. He said, hey, I cannot recall looking at inserts before prescribing Galbapentin and Mr. Lopez. So, he conceded, he didn't even look at it. So, how can they comply with something? And does the district court say something along the lines of, nothing. I've never been to the doctor where they whip out these pieces of paper. He just basically reached a ruling based on his own experience. That's, we don't give up the right of judge not injecting his own experiences. If it's a bench trial, there is no jury trial under Tort Claim Act against US. But if this was a jury trial, I'm sure the court would have reversed because jurors are not allowed to bring their own experiences. Similarly, he was not allowed to bring his own experiences. Every single expert and non-retained expert witness acknowledged that there was a duty to comply with the warning requirements. It was not complied. We had testimony of my clients who testified. He didn't know what he was taking. Nobody counseled him. There was no word documented. Dr. Holland acknowledged she's never even looked at his chart to see if he's taking a medication that's causing him. The roommate said he was jittery. He was shaky because of medication he's taking. He said that to the coroner's, the investigators, that he was a medication. He was complaining he was taking something, making him very, very jittery and shaky. So all of those factors were there, established and unrebutted. I cannot understand for the life of me what the government's forfeiture or waiver argument is. I think I angered that judge so many times by constantly reminding, trying to bring a deposition, which is he would not allow me to read the deposition, to impeach Holland, who said she didn't remember anything about this interaction. He didn't allow me to show instructions. Every witness, he would ask me, what are you trying to get out of this witness? Just in front of the witness, he wanted me to tell the court, in front of the witness, what I am trying to elicit out of the witness to prove what point, which is I think is highly improper when government asks witnesses to wait outside. And I know I am almost out of my time. Thank you. Thank you. Thank you both sides for the helpful arguments. This case is submitted.
judges: FRIEDLAND, MILLER, Traum